*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| TRICIA SURINA and JAMES D. SURINA, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 17-2173(FLW) |
| | : | |
| v. | : | |
| | : | OPINION |
| SOUTH RIVER BOARD OF EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**WOLFSON**, **U.S. District Judge:**

Plaintiffs Tricia and James Surina (collectively, "Plaintiffs") are parents of A.S., who is an autistic child; they have brought this § 1983 action against various state agency defendants,[1] including Robert Pruchnik, a private attorney employed by the Board as its Special Education Counsel. Plaintiffs allege that Defendants violated Plaintiffs' constitutional rights by engaging in sham investigations of child abuse and neglect, that Defendants retaliated against Plaintiffs for exercising their First Amendment rights to advocate for their disabled child, and that defendants Pier and Blake failed to properly hire, supervise or train child protective service workers. In addition to these federal claims, Plaintiffs also bring parallel state claims under the New Jersey

---

[1] These named defendants include: the South River Board of Education (the "Board" or the "District"); Michael Pfister, Superintendent of South River Public Schools; Margaret Pribyl, Director of Special Student Services; Odalis Delatorre, Case Manager; Charles Erlich, Special Education Consultant; Wayne Sherman, Principal of South River Elementary School; Lisa Von Pier, Director of the New Jersey Division of Child Protection & Permanency ("DCP&P"); Allison Blake, Commissioner of the Department of Children and Families ("DCF"); and Jackie, Case Worker for DCP&P (collectively, the "Agency Defendants"). The Court will refer to the Agency Defendants and defendant Robert Pruchnik as "Defendants."

Civil Rights Act, and a claim for intentional infliction of emotional distress. In the instant matter, defendant Pruchnik moves for dismissal of the claims asserted against him because, *inter alia*, he is not a state actor subject to suit under § 1983. For the reasons set forth below, the Court grants Pruchnik's motion.

**BACKGROUND**

For the purposes of this motion, the Court will only recount relevant facts from the Complaint and take them as true. Most of the allegations in the Complaint set forth various incidents between Plaintiffs and the Agency Defendants that are the underlying factual bases for Plaintiff's constitutional claims. As a brief summary, Plaintiffs transferred their special needs son, A.S., to the South River Public School District (the "District") for the 2014/2015 school year and entered into an agreement (the "Agreement") with the District to meet A.S.'s special educational needs. *See* Compl., ¶ 103. From early 2015 through 2016, however, numerous ongoing disputes arose between the parties concerning the needs and well-being of A.S. *See id*. at ¶¶ 18-127. One of the disputes centered on the District's obligations under the Agreement.

The District took the position that it was not required to directly fund an observation visit by Plaintiffs' educational expert, Dr. Michelle Havens. *See id.* at ¶¶ 102-15. Pruchnik, a private attorney at the Firm of Campbell & Pruchnik, LLC, represented the District and communicated with Plaintiffs regarding the District's legal position.[2] Indeed, because of the various disputes, it

---

[2] The Complaint is silent on certain aspects of Pruchnik's role as counsel to the District, and indeed, while Plaintiffs accuse Pruchnik of taking certain unconstitutional actions against them, Plaintiffs' allegations in that regard are vague and lack details. To paint a fuller picture, Pruchnik, in his opposition, cites to two administrative decisions, four decision letters from the New Jersey Department of Education, two due process petitions, and one letter referenced in Plaintiffs' Complaint. Although Plaintiffs argue that this Court cannot consider these agency documents, courts may, on a motion to dismiss, consider public records, such as letter decisions of government agencies and published reports of administrative bodies. *See Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993). To be clear, the Court

2

appears that Plaintiffs have filed three separate requests, in an administrative setting, to enforce Plaintiffs' previous settlement with the District. *See* Dep't of Education Decision Letters dated January 20, 2015, March 19, 2015 and October 2, 105. In addition, Pruchnik, on behalf of the District, also filed two due process petitions against Plaintiffs to enforce the parties' Agreement. *See* Due Process Petitions dated October 21, 2015 and December 15, 2015. On December 30, 2015, the Office of Administrative Law approved a settlement agreement as to the due process petitions filed by the District. *See* December 30, 2015 Decision Approving Settlement. According to the public documents and Plaintiffs' pleadings, during this entire administrative process, the District was represented by Pruchnik, and in that connection, Pruchnik communicated with Plaintiffs regarding the District's positions on various issues, which positions with which Plaintiffs vehemently disagreed. *See* Compl.,¶¶ 77-78; 82; 102-106.

More specifically, Mr. Pruchnik attended a July 15, 2016 meeting, on behalf of the District, to discuss A.S's individualized education plan ("IEP") for the 2016/2017 school year; the purpose of the meeting was to resolve Plaintiffs' pending due process petitions at that time. *See id.* at ¶¶ 82, 86. At the meeting, Plaintiff alleges that Mr. Pruchnik was not cooperative and that he acted in a threatening manner. *See id.* Suffice to say, the parties did not resolve their differences. In addition, Plaintiffs allege that in September 2016, Mrs. Surina participated in a meeting by phone for the purpose of discussing A.S.'s curriculum for the school year. *See id.* at ¶ 96. During that meeting, Plaintiffs claim that Pruchnik did not permit Mrs. Surina to question A.S.'s behavioral therapist, and as a result, Mrs. Surina protested the nature of the conference. *Id.* at ¶ 97.

---

is not relying on the content of these documents, but rather, for the purposes of this motion, I am only considering them in the context of Pruchnik's role during Plaintiffs' administrative proceedings.

On March 30, 2017, Plaintiffs initiated the instant action against Pruchnik and various other defendants claiming that Pruchnik had violated: 1) their Fourth and Fourteenth Amendment rights under the Constitution to be free from a child abuse investigation; 2) their First Amendment rights by retaliating against them for their unpopular speech protecting A.S.'s educational rights; and 3) their rights under the New Jersey Civil Rights Act. Plaintiffs also accuse Pruchnik of intentionally inflicting emotional distress upon them. In the instant matter, Pruchnik moves to dismiss all claims against him.

## DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations and citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequ ential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations and brackets omitted).

## II.  State Action

Plaintiffs' claims pursuant to the U.S. Constitution are brought under § 1983. In that regard, as a threshold pleading requirement, Plaintiffs must allege two distinct elements on their § 1983 claim. First, they must "allege the violation of a right secured by the Constitution and laws of the United States," and more importantly, they are required to "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48

(1988). "As a matter of substantive constitutional law[,] the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936-37 (1982) (citation and internal quotation marks omitted). Section 1983, thus, protects against constitutional violations by the State, but "not against wrongs done by individuals." *United States v. Price*, 383 U.S. 787, 799 (1966). In other words, individual § 1983 liability attaches only in instances where the State is responsible for the specific conduct causing the alleged harm. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141-42 (3d Cir. 1995); *see Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)("[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor.").

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *W. v. Atkins*, 487 U.S. 42, 49 (1988)(quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In that connection, as a general matter, the Supreme Court has been clear that a lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981). Further, the Third Circuit Court of Appeals has long held that

> [a]lthough states license lawyers to practice, and although lawyers are deemed "officers of the court," this is an insufficient basis for concluding that lawyers act under color of state law for the purposes of 42 U.S.C. § 1983. Liability under 42 U.S.C. § 1983 cannot be predicated solely on the state's licensing of attorneys. Participation in a highly regulated profession does not convert a lawyer's every action into an act of the State or an act under color of state law.

*Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980)(citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 355 (1974)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277-78 (3d Cir. 1999)

("[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 644 (E.D. Pa. 2014); *see also Jackson*, 419 U.S. at 354 ("Doctors, optometrists, lawyers, Metropolitan, and Nebbia's upstate New York grocery selling a quart of milk are all in regulated businesses, providing arguably essential goods and services, 'affected with a public interest.' We do not believe that such a status converts their every action, absent more, into that of the State.").

Also, state action cannot be found when a private attorney is merely retained by a state government agency to perform his/her traditional functions. *See Yoder v. MacMain Law Group, LLC*, 691 Fed. Appx. 59, 60 (3d Cir. 2017)(rejecting plaintiff's argument that an attorney is subject to § 1983 liability simply by representing a local police department); *Limehouse v. Delaware*, 144 Fed. Appx. 921, 923 (3d Cir. 2005)("[t]he allegations against Cobb, a private attorney, pertain to his representation of the [state] defendant in the state court proceeding. His representation, alone, does not render Cobb a 'person acting under color of state law' under § 1983."); *see also Singh v. Harrison*, 412 Fed. Appx. 430 (3d Cir. 2011)(upholding dismissal of § 1983 claim because private attorney was not a state actor). More specifically, the Third Circuit has recently advised that private attorneys who, on behalf of their public entities, respond to specific complaints and defend suits involving allegations of wrongdoing against the public entities are the quintessential functions of a lawyer. *See id.* This is so, the Third Circuit explained, because "before private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the constitutional deprivation, *e.g.*, authorizing its own officers to invoke the force of law in aid of the private persons request." *Angelico*, 184 F.3d at 277.

Here, Plaintiffs argue that they have alleged conduct on the part of Pruchnik that goes above and beyond his capacity as an attorney; Plaintiffs allege that Pruchnik participated in IEP

7

meetings and communicated directly with Plaintiffs in a manner to chill Plaintiffs' exercise of their First Amendment rights. In short, Plaintiff contends that Pruchnik was acting as a designee of the school district, rather than a legal representative. Plaintiffs claim that under the Joint Action Test, Pruchnik became a state actor when he took part in the alleged wrongdoing. Plaintiffs' argument is misplaced.

Under the two-pronged Joint Action test, the Third Circuit has held that "a private party will be deemed a state actor if it is a 'willful participant in joint action with the State or its agents.'" *Cahill v. Live Nation*, 512 Fed. Appx. 227, 230 (3d Cir. 2013)(quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982); *Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984). First, to be classified as a state actor through joint action, there must be allegations of a pre-arranged plan between the state actor and the private party. *Cruz*, 727 F.2d at 80; *Cahill*, 512 Fed. Appx. at 230-231. Second, the private party must have substituted its judgment for that of the state official's. *Cruz*, 727 F.2d at 80; *Cahill*, 512 Fed. Appx. at 230-231. Only if these two prongs are satisfied, can the party be "said to have engaged in the 'concert[ed]' or 'joint action' with the [state actors] necessary to bring them within the scope of a § 1983 claim." *Cruz*, 727 F.2d at 80; *Cahill*, 512 Fed. Appx. at 230-231. This inquiry must be fact-specific. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *see Lugar*, 457 U.S. at 939 ("[T]he question is whether [the private party] under the facts of this case . . . may be appropriately characterized as [a] 'state actor[].'"). The inquiry must also take into account "the totality of the circumstances and cannot be limited to a single factual question." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 610-11 (3d Cir. 2011).

Applying those concepts in this case, Plaintiffs' allegations of state action on the part of Pruchnik fail to satisfy the Join Action test. I note at the outset that while Plaintiffs' Complaint is

lengthy, the allegations against Pruchnik are limited, and those allegations are vague at best as to Pruchnik's role. However, based on the pleadings and the public documents submitted, Pruchnik acted as the legal representative of the School District in each of the instances wherein Plaintiffs have alleged Pruchnik's participation. First, as to the July 2016 meeting, Pruchnik was present to resolve Plaintiffs' pending due process petition against the District. Similarly, in the September 2016 meeting, Pruchnik participated in a telephone conference with Plaintiffs in connection with a decision letter issued by the Department of Education. In each of these circumstances, Pruchnik was involved as the District's attorney dealing with Plaintiffs in connection with the various due process petitions filed either by Plaintiffs or the District. At best, Plaintiffs have claimed that, in his role as the District's lawyer, Pruchnik allegedly made "threats" or that the attorney disallowed Plaintiffs to voice their opinions during certain meetings. But, nothing Plaintiffs have alleged suggests that Pruchnik was a "willful participant" jointly with the District to allegedly deprive Plaintiffs of their constitutional rights; indeed, no allegations of any pre-arranged plan, or that the District's judgment was somehow substituted by Pruchnik's. Rather, Plaintiffs simply — in a conclusory manner — allege that Pruchnik "acted in concert with one or more of the other individual defendants." Comp., ¶ 7. There are no facts to shed light on any kind of conspiracy or joint action with other defendants such that this Court can infer that Pruchnik was a state actor subject to liability under § 1983. *See, e.g.*, *Singh v. Harrison*, 412 Fed. Appx. 430, 431 (3d Cir. 2011)(affirming dismissal of § 1983 claim with prejudice against private attorney but noting that there was no allegation that giving rise to plausible inference that private attorney acted under color of state law or conspired with state actors); *Stackhouse v. Crocker*, 266 Fed. Appx. 189, 190 (3d Cir. 2008)(finding plaintiff failed to state a claim against private attorney specifically noting

that he provides no reason that attorney should be considered to have acted under color of state law).

Accordingly, since Plaintiffs have failed to allege Pruchnik was a state actor, all of Plaintiffs' claims under § 1983 against Pruchnik are dismissed. Similarly, Plaintiffs' claims under the NJCRA are dismissed for the same reasons, since NJCRA is governed by § 1983 principles. *See Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443-44 (D.N.J. 2011); *Chapman v. New Jersey*, No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . . ."); *Armstrong v. Sherman*, No. 09-716, 2010 U.S. Dist. LEXIS 55616, at *5 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . ."); *Shuman v. Raritan Twp.*, No. 14-3658, 2016 U.S. Dist. LEXIS 164996, at *57 (D.N.J. Nov. 30, 2016).[3]

**III    Intentional Infliction of Emotional Distress**

Plaintiffs also brought an intentional infliction of emotional distress claim against Pruchnik. In his moving brief, Pruchnik argues that this claim should be dismissed for failure to state a claim, and it does not appear that Plaintiffs oppose such a dismissal. Consequently, the IIED claim can be dismissed on this basis alone. *See Lightfoot v. Healthcare Revenue Recovery Group, LLC*, No. 14-6791, 2015 U.S. Dist. LEXIS 29673, at *9 (D.N.J. Mar. 11, 2015) (stating that the "[d]efendant's Motion to Dismiss Count Four is unopposed and will be granted").

---

[3]    Plaintiffs also brought an intentional infliction of emotional distress claim against Pruchnik. In his moving brief, Pruchnik argues that this claim should be dismissed for failure to state a claim, and it does not appear that Plaintiffs oppose such a dismissal. Consequently, the IIED claim can be dismissed on this basis alone. *See Lightfoot v. Healthcare Revenue Recovery Group, LLC*, No. 14-6791, 2015 U.S. Dist. LEXIS 29673, at *9 (D.N.J. Mar. 11, 2015) (stating that the "[d]efendant's Motion to Dismiss Count Four is unopposed and will be granted"). Moreover, on the merits, Plaintiffs' IIED claim fails, because they have not alleged any intentional conduct by Pruchnik that was extreme or outrageous. *See DeAngelis v. Hill*, 180 N.J. 1, 20 (2004). Accordingly, Plaintiffs' IIED claim is dismissed.

Moreover, on the merits, Plaintiffs' IIED claim fails, because they have not alleged any intentional conduct by Pruchnik that was extreme or outrageous. *See DeAngelis v. Hill*, 180 N.J. 1, 20 (2004). Accordingly, Plaintiffs' IIED claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiffs' § 1983 claims against Pruchnik are dismissed, and their state IIED claim is also dismissed. Accordingly, having dismissed all the claims against him, Pruchnik is dismissed as a defendant.


Dated: March 15, 2018                     /s/ Freda L. Wolfson
                                          Hon. Freda L. Wolfson
                                          United States District Judge