**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

                      :

TRICIA SURINA and JAMES D. SURINA, :

                      :

         Plaintiffs,  :       Civil Action No.: 17-2173 (FLW) (TJB)

                      :

        v.            :

                      :          **OPINION**

SOUTH RIVER BOARD OF     :

EDUCATION, *et al*.,       :

                      :

        Defendants.  :

_____:

**WOLFSON, United States District Judge:**

      Before the Court are three separate motions to dismiss the Amended Complaint of

Plaintiffs Tricia and James Surina (collectively, "Plaintiffs"), parents of A.S., who is an autistic

child; they brought this § 1983 action against various State and District Defendants.[1] After this

Court previously dismissed, with prejudice, all claims against State Defendants, and certain other

claims, Plaintiffs filed an Amended Complaint reasserting a federal claim against District

Defendants, Mr. Erlich, and Mr. Pruchnik for violating Plaintiffs' First Amendment rights by

retaliating against Plaintiffs for advocating for their disabled child, and also a parallel state law

---

[1] The State Defendants, Lisa Von Pier, Director of the New Jersey Division of Child Protection
& Permanency ("DCPP") and Allison Blake, Commissioner of the Department of Children and
Families ("DCF"), have since been dismissed from the suit. ECF No. 69. The District Defendants
are South River Public School District ("South River" or "District"), Michael Pfister,
Superintendent of South River Public Schools; Margaret Pribyl, Director of Special Student
Service; Odalis DelaTorre, Case Manager; and Wayne Sherman, Principal of South River
("District Defendants"). The other named Defendants who separately move to dismiss are
Charles Erlich, Special Education Consultant for the District, and Robert Pruchnik, a private
attorney, who performed work for South River. Collectively, District Defendants, Erlich, and
Pruchnik will be referred to as "Defendants."

claim against the same Defendants under the New Jersey Civil Rights Act ("NJCRA"). Although

not explicitly styled as a separate cause of action, Plaintiffs appear to also bring a claim against

South River, pursuant to *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978).[2] District

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that

Plaintiffs have not stated any claims upon which relief can be granted. Mr. Erlich, the Special

Education Consultant, separately moves to dismiss on the basis of improper process, service of

process, and failure to state a claim,[3] and Mr. Pruchnik, the private attorney, also separately

moves to dismiss for failure to state a claim, or, in the alternative, for an order striking all claims

against him.

For the following reasons, Defendants' motions to dismiss are granted, and all claims

against Defendants are dismissed.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are residents of the Borough of South River, Middlesex County, New Jersey

and are the legal and biological parents of A.S., an autistic child attending school at South River.

---

[2] Moreover, although the Court dismissed, with prejudice, Plaintiffs' previous causes of action for violations of their Fourth and Fourteenth Amendment rights and intentional infliction of emotional distress, the Amended Complaint reasserts these counts, unchanged from the original Complaint.

[3] As with the original Complaint, Mr. Erlich was never served with the Amended Complaint, but Plaintiffs again argue they had good cause because they did not know his address. However, Plaintiffs apparently have taken no action whatsoever at any point in the case to ascertain Mr. Erlich's address, so it is within a court's sound discretion to dismiss all claims against Mr. Erlich. *McCurdy v. American Board of Plastic Surgery,* 157 F.3d 191, 196–97 (3d Cir. 1998). Accordingly, Plaintiff's claims against Mr. Erlich are subject to dismissal without prejudice. However, because the Amended Complaint "suffers from [ ] more serious and substantive deficienc[ies] which require[ ] dismissal with prejudice, I decline to dismiss this case on the basis of her failure to effect timely and proper service." *Gayden v. HQ Fort Dix*, No. 04-5299, 2006 WL 2318917, at *4 (D.N.J. Aug. 9, 2006).

Am. Compl. at ¶ 4. A.S. has a severe expressive and receptive language disorder. *Id*. Plaintiffs brought suit against various State and District Defendants on March 30, 2017, alleging violations of their: 1) Fourth and Fourteenth Amendment rights under the Constitution to be free from a child abuse investigation; 2) First Amendment rights due to retaliation against them for their unpopular speech protecting A.S.'s educational rights; and 3) rights under the NJCRA. Plaintiffs also accused the District Defendants of intentionally inflicting emotional distress upon them. This Court previously issued two Opinions on separate motions to dismiss the Complaint. First, on March 15, 2018, the Court dismissed all claims against Mr. Pruchnik, holding that he was not a state actor amenable to suit. Mot. to Dismiss Op. at 10, March 15, 2018, ECF No. 40 ("MTD 1 Op."). Second, in a July 30, 2018 Opinion, the Court dismissed all claims, with prejudice, against State Defendants, finding that these claims were barred by sovereign immunity, and dismissed Plaintiffs' Fourth and Fourteenth Amendment claims and intentional infliction of emotional distress claim, with prejudice, as to all Defendants. Mot. to Dismiss Op. at 23, July 30, 2018, ECF No. 44 ("MTD 2 Op."). The Court also dismissed Plaintiffs' First Amendment retaliation claim, without prejudice, allowing Plaintiffs' leave to amend their Complaint to plead causation. *Id.* The Court also granted Plaintiffs leave to amend to plead a *Monell* claim against South River. *Id.* Thereafter, Plaintiffs filed an Amended Complaint, and the defendants filed the present motions to dismiss.

As I already laid out a more complete factual background in my previous Opinions, I will recount in detail only those allegations pertinent to the present motions. The dispute between the parties dates back to early 2015. After A.S. transferred to South River, Plaintiffs entered into an agreement with the District to meet A.S.'s special educational needs, but from early 2015

through 2016, numerous ongoing disputes arose between the parties concerning the needs and well-being of A.S. *See id.* at ¶¶ 18-143.

In particular, the Amended Complaint alleges that the problems between the parties began on March 30, 2015, when Mrs. Surina received a phone call from Mr. Sherman and Ms. Pribyl informing her that two of her son's classmates had reported that her son was mistreated by his 1:1 aide. *Id.* at ¶ 18. These Defendants stated that they had reported the incident to the Division of Youth & Family Services Investigations ("DYFS"), but DYFS responded that it would not pursue an investigation. *Id.* at ¶ 116. Mrs. Surina asked for an incident report, but was told by Mr. Sherman that he was not required to write any reports and should call DYFS for its report. *Id.* The following morning, Mrs. Surina called the school and again requested an incident report. *Id.* Mr. Sherman left a message on her answering machine stating that "no reports were made, no reports will be made, have a nice day." *Id*. Nonetheless, a few weeks later, a South River Policeman was able to retrieve an incident report for Mrs. Surina, which was dated March 31, 2015 at 8:41 A.M., approximately four hours before Principal Sherman left Mrs. Surina the message. *Id.* at ¶ 24.

On April 29, 2015, Mrs. Surina sought to observe her child in school, but was "unable to secure classroom observation times." *Id.* at ¶ 25. Thereafter, she took a walk on the public sidewalk adjacent to the school playground during her son's recess period. *Id.* at ¶ 26. While looking for her son, a recess aide (Mrs. Miller) yelled through a bullhorn to "immediately exit the sidewalk" because she was "too close to the children." *Id.* at ¶ 118. Mrs. Surina returned home and called the South River Police Department to file a harassment complaint against the recess aide. *Id.* at ¶ 28. A police officer, Patrolman Sullivan, arrived at Mrs. Surina's home and began to take her statement, but was soon joined by Sergeant Kevin Nielsen, who began

questioning Mrs. Surina about why she was walking on the sidewalk near the school playground. *Id.* at ¶ 29. Neilsen then returned to the school and wrote a Suspicious Person Complaint against Mrs. Surina "on behalf of Principal Sherman." *Id.* at ¶ 31. The report stated Mrs. Surina was on the public sidewalk looking at the children, and that Principal Sherman "was concerned for the safety of the children." *Id.* at ¶ 32.

During the winter, spring, and summer of 2015, South River reached a verbal agreement with Mrs. Surina permitting her to drop A.S. off and pick him up at the side entrance of the school and allowing his 1:1 teacher to escort him inside. *Id.* at ¶ 37. A.S. had scored in the fifth percentile for personal safety cognition, which necessitated him having an adult with him at all times. *Id.* at ¶ 38. After reaching this agreement with the District, Mrs. Surina also requested an Independent Educational Evaluation. When the District failed to respond to her, she filed a complaint with The New Jersey Office Of Special Education Programs. *Id.* at ¶ 40. Shortly after Mrs. Surina filed the Complaint, however, Plaintiffs allege that Principal Sherman informed Mrs. Surina that she would no longer be allowed to drop her son off by the Special Services door to be escorted in by a staff member on late days. *Id.* at ¶ 122. Plaintiffs allege that Principal Sherman claimed that she was receiving special treatment, and, going forward, she and her son would be treated like all students and their parents. *Id.* at ¶ 123.

Plaintiffs' claims primarily stem from an incident in March 2016, which Plaintiffs refer to as "retaliation" for their involvement in these disputes. That month, A.S. was absent from school for a period of time, and Ms. Pribyl and Ms. DelaTorre, the case manager, met with the school attendance officer, Ms. Widman, and instructed her to send a truant officer to the Surina home "to get more information about [A.S.'s] illness." *Id.* at ¶ 43. On March 21, 2016, the truant officer visited the home even though Mrs. Surina, that morning, "had faxed a signed Doctor's

5

Excusal From School note to Ms. Widman." *Id.* at ¶ 42. Ms. DelaTorre stated in her recorded report to DCPP and the South River Police Department that the school had received doctors' notes excusing the child from school due to illness, but stated that she did not like the fact that the doctors worked for a medical clinic, the notes had no diagnosis, and Mrs. Surina did not take him to his usual Pediatrician. *Id.* at ¶ 71. Ms. DelaTorre also reported that A.S. had hygiene issues, including dirty hair, body odor, and wore the same pants three days in a row, and alleged that Mrs. Surina made her son bathe in scalding water. *Id.* at ¶ 72.[4] Two days after the truant officer's visit, Mrs. Surina submitted a "Request To Enforce A Court Order" to the New Jersey Office Of Special Education Programs and Mr. Pfister. *Id.* at ¶ 44. On March 25, 2016, at approximately 4:15 P.M., Mrs. DelaTorre, after speaking with Mr. Pfister and Mr. Sherman, issued a report to DCPP and the South River Police Department stating that Mr. and Mrs. Surina's son was missing and neglected. *Id.* at ¶ 45.

This was not the end of Plaintiffs' allegedly contentious interactions with the school district. Mr. and Mrs. Surina attended a July 15, 2016 meeting, at which Mr. Pfister and Mr. Erlich were present, to discuss A.S.'s individualized education plan ("IEP") for the 2016/2017 school year. *Id.* at ¶ 57. Plaintiffs allege that Mr. Pfister stated that if the Surinas went forward with their Due Process petitions, "he would use all of the school's vast resources to defeat them." *Id.* at ¶ 58. Mr. Erlich "seemed to be amused by Mr. Surina's discomfort and began to snicker," and, rather than stopping when Mr. Surina asked him to, he jumped to his feet and exclaimed "I'm not taking anymore of you verbal abuse!" in Mr. Surina's face, at which point Mrs. Surina ended the meeting. *Id.* at ¶ 60.

---

[4] In fact, Mrs. Surina later obtained a log in which the school nurse noted in January 2016 that A.S.'s 1:1 aide brought him into her office three times due to A.S.'s hygiene issues. *Id.* at ¶ 73.

Plaintiffs further allege that Ms. Pribyl had written a letter to Mrs. Surina, addressing an email that Mrs. Surina had written to her child's 1:1 teacher requesting that the teacher refrain from giving A.S. hard candy or any other hard food that could damage his teeth. *Id.* at ¶ 86. Mrs. Pribyl wrote in her letter that she found Mrs. Surina's email to be "condescending, inappropriate, and demeaning." *Id.* at ¶¶ 86-88. Plaintiffs also complain that Ms. Pribyl and Ms. DelaTorre repeatedly called to tell Plaintiffs that they believed A.S. had an ear infection, and that Ms. DelaTorre asked Mrs. Surina, "What kind of mother are you?" and then stated, "I wouldn't want my child to suffer." *Id.* at ¶¶ 95-97.

In addition to these incidents, the Amended Complaint also includes several allegations that Plaintiffs fail to discuss in their briefing. I will briefly recount them.

- The Amended Complaint also alleges that Mrs. Surina was forbidden to discuss with the school an Institutional Abuse report or the accompanying Autism NJ Recommendations Report commissioned by the Institutional Abuse Division of DCPP. *Id.* at ¶ 109.

- Plaintiffs allege that Mr. Erlich refused to send any of A.S.'s work home or the book he was working in because all the materials were "copyrighted." *Id.*

- Plaintiffs allege that Mrs. Surina was forced to communicate only with the case manager, Ms. DelaTorre, regarding any concerns, whereas other parents were permitted to discuss their concerns with staff. *Id.* at ¶ 112. Robert Pruchnik, also informed Mrs. Surina's son's teachers, at IEP meetings that Mrs. Surina was not to have direct communications with them. *Id.* at ¶ 114.

In sum, based on these allegations, the Amended Complaint asserts the exact same causes of action against Defendants, claiming that District Defendants had violated Plaintiffs': 1) Fourth and Fourteenth Amendment rights under the Constitution to be free from a child abuse

investigation; 2) First Amendment rights by retaliating against them for their unpopular speech protecting A.S.'s educational rights; and 3) rights under the NJCRA. Plaintiffs also accuse the District Defendants of intentionally inflicting emotional distress upon them. Further, although This Court previously dismissed all of Plaintiffs' claims against Pruchnik, concluding that Pruchnik was not a state actor liable under § 1983, Plaintiffs attempt to resurrect their claims against him.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)6 does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the

"plausibility standard is not akin to a 'probability requirement,'…it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within the Third Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "outline[s] the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, where "there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

Although I previously dismissed Plaintiffs' Counts I and V, for violations of Plaintiffs' Fourth and Fourteenth Amendment rights and for intentional infliction of emotional distress, these Counts remain in the Amended Complaint. So, too, are the claims against Pruchnik, whom I previously dismissed from the case. I will first address these claims before turning to Plaintiffs' remaining claims: 1) a claim for Defendants' alleged violations of Plaintiffs' First Amendment rights by retaliating against Plaintiffs for their unpopular speech protecting A.S.'s educational rights,  2) a *Monell* claim against South River for instituting a policy or custom of improperly using false reports to DCPP as a means of retaliation; and 3) claim for violations of Plaintiffs' rights under the NJCRA.

### B.  Counts I and V; Claims Against Pruchnik

Defendants move to dismiss Counts I and V, for violations of Plaintiffs' Fourth and Fourteenth Amendment rights and intentional infliction of emotional distress, arguing that the Court's previous Opinion dismissing these claims, with prejudice, bars Plaintiffs from raising them again. Similarly, Defendant Pruchnik moves to strike all allegations in the Complaint relating to him, because the Court previously found that he was not a state actor amenable to suit under § 1983. "The "law of the case" doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation. *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc.,* 123 F.3d 111, 116 (3d Cir. 1997). The Supreme Court in *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800 (1988), determined that when exercising discretion with regard to former rulings courts should "be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Id.* at 816. The Third Circuit has adopted the "extraordinary circumstances" framework for reviewing "law of the case" disputes. The "law of the case" doctrine does not apply where (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create a manifest injustice. The "law of the case" doctrine applies to a court's decision of law. *In re City of Phila. Litig.,* 158 F.3d 711, 718 (3d Cir. 1998) (citing *Pub. Interest Research Group,* 158 F.3d at 116–17). Plaintiff has the burden to present "extraordinary circumstances" necessary to overcome the strong presumption of the law of the case. *Falor v. G & S Billboard,* No. 04–2373, 2008 WL 5190860, at *2 (D.N.J. Dec., 10 2008).

Here, Plaintiffs fail to address any of Defendants' arguments that they should not be permitted to relitigate issues that the Court already decided. In fact, Plaintiffs neglect to even mention Counts I and V in any of their opposition briefs, seemingly conceding that dismissal of

these Counts is proper. As for Pruchnik, Plaintiffs simply argue again that he is a state actor but fail to explain how any "extraordinary circumstances" have intervened since the Court's previous decision. Without any argument from Plaintiffs regarding available new evidence, supervening new law, or why the Court's previous decisions were clearly erroneous, Plaintiffs have entirely failed to carry their burden of overcoming the strong presumption in favor of applying the law of the case. Moreover, the Court's previous Opinion and Order expressly granted Plaintiffs leave to amend *only* its First Amendment retaliation claims and parallel NJCRA claim, as well as permitting them to assert a *Monell* claim. Plaintiffs did not seek reconsideration of any of these rulings within the time limits set forth by this Court's Local Rules. Thus, the Court will reject Plaintiffs' attempt to revive Counts I and V in the Amended Complaint, as well as any claims against Pruchnik; these claims remain dismissed. *See Falat v. Cty. of Hunterdon*, No. 12-6804, 2014 WL 6611493, at *6 (D.N.J. Nov. 21, 2014) (dismissing causes of action and claims against specific defendans in amended complaint after previous dismissal); *Davidson v. Corr. Med. Servs., Inc.*, No. 08-3580, 2008 WL 5330544, at *6 (D.N.J. Dec. 15, 2008) (dismissing claims in amended complaint under law of the case doctrine after plaintiff "misconstrued" court's previous dismissal order and asserted claims against defendants previously dismissed from the case).

## C. Violations of Plaintiffs' First Amendment Rights to Advocate

Plaintiffs amended their § 1983 First Amendment retaliation claim against District Defendants and Mr. Erlich after I gave Plaintiffs leave to do so. To properly state such a claim, a plaintiff must allege facts showing: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463F.3d 285, 296 (3d Cir. 2006). "The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct

was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (citations and quotations omitted). To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, "the plaintiff usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link ." *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir.2010) (citing L*auren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007)). "The Third Circuit has cautioned that "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." *Id.* Moreover, a defendant may "defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." *DeFlaminis,* 480 F.3d 259, 267.

The Amended Complaint, here, appears to be nearly identical to the original Complaint, with the exception of approximately forty numbered allegations that Plaintiffs have appended to the end of the factual background. In their briefing, Plaintiffs largely fail to connect any new allegations to their First Amendment retaliation claim, merely asserting, generally, that Defendants "may be found liable under these §1983 because the act of causing an Unconstitutional DCP&P investigation in violation of the First Amendment advanced the agreed upon conspiracy to retaliate against the Plaintiffs." ECF No. 62 at 29. Aside from being conclusory, this argument is also unhelpful because the Amended Complaint does not include a cause of action for conspiracy to violate Plaintiffs' constitutional rights. Thus, although I am "not

obliged to comb through the entire case, including many briefs and motions, to ferret out factual matters," I will nonetheless "parse through the record to determine whether any of these protected activities were a substantial or motivating factor in any of [Defendants'] allegedly retaliatory acts." *Falco v. Zimmer*, No. 17-3396, 2019 WL 1569564, at *17 (3d Cir. Apr. 11, 2019) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403–04 (6th Cir. 1992)). These allegedly retaliatory acts included false reporting to DCPP by Ms. DeLaTorre (after conferring with Mr. Pfister and Mr. Sherman), Sherman filing false suspicious persons reports with the local police, Sherman revoking privileges to drop their son off at school in an area more accessible to their special needs son, Ms. DeLaTorre accusing Plaintiffs of medical neglect and stating to Mrs. Surina, "What kind of mother are you?" and "I wouldn't want my child to suffer," and Mr. Pfister threatening to use the school district's resources against them if they pursued due process claims for their son. I will deal with each of these allegations in turn.

1. Odalis DelaTorre

As they did in their original Complaint, Plaintiffs reassert that Ms. DelaTorre's "false reporting" to DCPP, after conferring with Mr. Pfister and Mr. Sherman about A.S.'s absence from school, amounted to retaliatory conduct that was aimed at deterring Plaintiffs from pursuing their due process rights. I previously dismissed this claim against DelaTorre because "Plaintiffs [failed] to allege any facts indicating a causal link between the allegedly constitutionally protected conduct and the alleged retaliation." MTD 2 Op. at 18. Generally, this element "presents a question of fact for the jury." *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005). But, at this motion to dismiss stage, Plaintiffs must allege some facts, direct or circumstantial, related to this element that are "enough to raise a right to relief above the speculative level*," Falco*, 2019 WL 1569564, at *15 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted).

Here, the Amended Complaint includes no new facts regarding causation, belying any notion that Mrs. Surina's request to enforce a court order caused the allegedly retaliatory action.[5] Indeed, although the Court directed Plaintiffs to plead causation, Plaintiffs have made no effort to connect Ms. DelaTorre's "false reporting" to any alleged protected activity. Instead, Plaintiffs merely aver that Ms. DelaTorre made the "calculated bad faith report…to report that Mr. and Mrs. Surina's son was missing and neglected." Am. Compl. at ¶ 44. After combing through the Amended Complaint, it appears possible that Plaintiffs attempt to make out a *prima facie* case for retaliation based on the temporal proximity between Mrs. Surina's March 24, 2016 filing of a Request to Enforce a Court Order, and Mrs. Delatorre's report to the DCPP a day later. However, Plaintiffs have neither made this argument, nor even definitively stated that the Request to Enforce a Court Order constitutes the protected activity against which Ms. DelaTorre allegedly retaliated. Establishing the precise *prima facie* case that Plaintiffs attempt to plead is particularly important because the bulk of the allegations in the Amended Complaint indicate that Ms. DelaTorre "would have taken the same action even if the plaintiff had not engaged in the protected activity." *DeFlaminis,* 480 F.3d 259 at 267. According to the Amended Complaint, A.S. had been out from school for portions of the month of March, 2016. In response to these absences, Ms. DelaTorre (along with Ms. Pribyl) had sent a truancy officer to Plaintiff's home on March 21, 2016, three days before Mrs. Surina filed her Request to Enforce the Court Order, "in order to get more information about her [A.S.'s] illness." Plaintiffs had submitted a doctor's

---

[5] The Amended Complaint alleges that Ms. DelaTorre may have violated HIPPA in seeking information regarding A.S.'s illness, but fails to assert any separate claim. Regardless, any such "claim fails as a matter of law because HIPAA does not provide for a private cause of action." *Hamilton v. Hite*, No. 16-5602, 2017 WL 3675398, at *6 (E.D. Pa. Aug. 23, 2017) citing *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011)).

note, excusing the absence, but, as the Amended Complaint acknowledges, Ms. DelaTorre stated

that she was not comfortable with the fact that they were from a walk-in clinic and did not

contain a diagnosis. The Amended Complaint further alleges that Ms. DelaTorre also previously

reported that A.S. had presented in the past with hygiene issues, a concern that was surely

heightened in the wake of his extended absence. While Plaintiffs deny being informed of hygiene

issues, they concede that the hygiene issues were previously documented in the nurse's log.

Thus, the Amended Complaint seems to indicate that the school had an interest in monitoring

A.S.'s absence even before Mrs. Surina filed her request on March 24th, and that Ms. DelaTorre

had ample reason to file the report even if Mrs. Surina had not filed her request.[6]

Thus, because Plaintiffs have failed to allege that their protected conduct caused Ms,

DelaTorre's reporting to DCPP, the First Amendment retaliation claim against Ms. DeLaTorre

fails and will be dismissed, without prejudice.

### 2. Principal Sherman

The Amended Complaint also includes various allegations regarding Mr. Sherman, the

school principal. These allegations do not support a claim for First Amendment retaliation for

similar reasons as those against Ms. DelaTorre.

Plaintiffs assert that Mr. Sherman was involved in Sergeant Nielsen filing false

suspicious person reports in retaliation for Plaintiff's filing a harassment complaint. On April 29,

2015, Mrs. Surina "took a walk on the public sidewalk during her son's recess period." The

---

[6] The other accusations leveled at Ms. Delattore also still do not rise to the level of retaliatory conduct. The Amended Complaint alleges that Ms. DelaTorre falsely accused Plaintiffs of medical neglect and stated to Mrs. Surina, "What kind of mother are you?" and "I wouldn't want my child to suffer." Am. Compl., at ¶ 122. This is not actionable retaliatory conduct. *See McKee*, 436 F.3d at 170 (quoting *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (noting that "courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.").

sidewalk is adjacent to the elementary school playground. While she was looking for her son, a recess aide yelled "you are too close to the children! You must immediately cross the street!" In response, Mrs. Surina returned home and filed a harassment complaint against the recess aide. The Amended complaint then alleges Sergeant Nielsen visited Mrs. Surina's home to question her regarding the harassment. However, Plaintiffs contend that, after realizing that Mrs. Surina was not dropping her harassment Complaint, Sergeant Nielsen quickly left the Surina home and filed a false suspicious report "on behalf of Principal Sherman." However, whatever the meaning of "on behalf of Principal Sherman," there is no allegation that Principal Sherman directed Sergeant Nielsen to file the report, or that he in any way communicated with Sergeant Nielsen after the visit to the Surina home. Plaintiffs do not even allege that Principal Sherman had any awareness of the incident with the recess aide. *See Ambrose v. Township of Robinson, Pa*., 303 F.3d 488, 493 (3d Cir. 2002) ("[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."). Thus, Plaintiffs have failed to plead causation, as there is no indication that Sherman was aware of Plaintiffs filing the harassment complaint, or that he was actually involved in the alleged retaliation. *Wilson v. Kerestes*, No. 13-3076, 2015 WL 631085, at *3 (M.D. Pa. Feb. 12, 2015) (dismissing First Amendment retaliation claim when there was no allegation that defendant was actually involved in the retaliation).

The Amended Complaint also alleges that Principal Sherman revoked Plaintiffs' drop-off privileges in retaliation for their filing a complaint with the New Jersey Office of Special Education Programs. Again, here, there is no allegation of causality. A protected activity and a retaliatory action must be 'very close' in time to prove causation. *Conklin v. Warrington Twp.*, 2008 WL 2704629, at 12 (M.D. Pa. July 7, 2008). Here, while Plaintiffs attempt to establish a

causal link between the filing of the complaint and the denial of the use of the side entrance on January 28, 2016, there is no indication of when the complaint was filed, entirely undermining the Court's ability to ascertain temporal proximity. *See Mash v. Twp. of Haverford,* No. 06-4479, 2007 WL 2254417, at *8 (E.D. Pa. Aug. 3, 2007), *aff'd sub nom.* 298 F. App'x 169 (3d Cir. 2008) (quotations omitted) (dismissing First Amendment retaliation claim when plaintiff did "not present any evidence demonstrating either an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory act" or "a pattern of antagonism coupled with timing to establish a causal link").

Thus, Plaintiffs' claim regarding Principal Sherman are dismissed.

### 3. Other Defendants: Pribyl, Pfister, and Erlich

In addition to Ms. DelaTorre and Mr. Sherman, Plaintiffs also maintain that various allegedly retaliatory actions by the remaining defendants amount to constitutional violations. However, the Court dismissed nearly all of these actions in its previous opinion because they would not prevent a person of ordinary firmness from expressing his right to free speech in the future. Plaintiffs amended allegations do not alter this analysis.[7]

For instance, Plaintiffs also allege that Mr. Pfister made a "threat" that the school district would defend itself if Plaintiffs pursued due process for their son. They also allege that Ms. Pribyl had stated that Mrs. Surina's email requesting that a teacher refrain from giving her son candy or any other hard food which could damage his teeth email was "condescending, inappropriate, and demeaning." However, neither of these comments approaches the level necessary to "deter a person of ordinary firmness from exercising his First Amendment rights."

---

[7] Plaintiffs also generally assert that Defendants' activities "shock the conscious." "Shocks the conscious" is not the appropriate standard under which to review a First Amendment retaliation claim, however, and Plaintiffs have offered no argument that it is.

*McKee*, 436 F.3d at 170 (quoting *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (noting that "courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.").

As for Defendant Erlich, the only allegations on which Plaintiffs rely are (1) snickering at an IEP meeting, (2) refusing to provide copyrighted materials, and (3) stating that Mrs. Surina is an IEP member in "name only." Plaintiffs fail to demonstrate a causal link between their advocacy and Mr. Ehrlich's conduct, as they never mention any dates, times, or periods to discern how these events were related temporally or imply retaliation. Moreover, Mr. Ehrlich's alleged conduct is not retaliatory action capable of sustaining a First Amendment retaliation claim, as none of this conduct amounts to any more than mild criticism. *Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 307 (M.D. Pa. 2008) ("Indeed, the statement is precisely the type of petty slight that the Supreme Court declared…would not deter a reasonable person from making a complaint").

In dismissing the original Complaint, I allowed Plaintiffs to amend in order to plead causation. Although the Amended Complaint contains new allegations, Plaintiffs do "not attempt to argue in [their] Opposition Brief[s] how any of facts listed in the Complaint apply to these required elements," making dismissal appropriate. *Rotante v. Franklin Lakes Bd. of Educ.*, No. 13-3380, 2014 WL 6609034, at *9 (D.N.J. Nov. 20, 2014). As such, Plaintiffs' Count II for First Amendment retaliation is dismissed as to all Defendants. The Court will, however, grant Plaintiffs one last chance to amend their First Amendment retaliation claim against only Ms. DelaTorre in order to identify a causal connection between Plaintiffs' protected activity and Ms. DelaTorre's alleged "false reporting" to the DCPP.

### D. *Monell* Claim Against South River

Plaintiffs allege that South River either instituted a policy of improperly using false reports to DCPP as a means of retaliation against parents of schoolchildren or demonstrated deliberate indifference in allowing for a pattern of such false reporting to continue without properly training its employees or agents. [8] To bring a claim under Section 1983, a plaintiff must show that, among other things, the defendant "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "Because vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each [defendant], through [her] own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888); *Dunlop v. Munroe*, 11 U.S. 242 (1812)). In other words, under *Monell* a municipality cannot be held liable solely because it employs an alleged tortfeasor, but "is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 175 (3d Cir. 2017), 872 F.3d at 175; *see also Thomas*, 749 F.3d at 222; *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009).

Indeed, as to the policy or custom, "A policy may be made only when a policymaker issues an official proclamation or decision." *Hernandez v. Borough of Palisades Park Police*

---

[8] The Amended Complaint does include a few new scattered allegations containing buzzwords that seem to indicate they are related to a possible *Monell* claim, but none of these specifically relate to the alleged unconstitutional policy or custom of sending false DCPP reports. For instance, the Amended Complaint states that "[t]here is no documentation that [DelaTorre] received any training from the district which prepared her to be a case manager." AM. Compl. at ¶ 108. Moreover, Plaintiffs merely include these allegations in the Amended Complaint, and offer no argument in their briefs as to how, theoretically, they might support their *Monell* claim.

*Dep't*, 58 Fed. Appx. 909, 912 (3d Cir. 2003). Conversely, "[a] custom may exist where the relevant practice is so permanent and 'widespread as to have the force of law.'" *Id.* (quoting *Bryan Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). In addition to imposing liability through a municipality's custom or policy, liability may also exist on a *Monell* claim based on a municipal defendant's failure to properly train employees to avoid violating constitutional rights. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.").

Here, Plaintiff's *Monell* claim fails for multiple reasons. First, since the Court finds that Plaintiffs have failed to properly state a cognizable First Amendment retaliation claim against the individual Defendants, Plaintiffs' *Monell* claim based on the District's alleged policy of First Amendment retaliation, fails as a matter of law. *See Deninno v. Municipality of Penn Hills,* 269 Fed.Appx. 153, 158 (3d Cir. 2008) ("Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual Defendants violated the Constitution.").

Second, even had Plaintiffs properly alleged a First Amendment retaliation claim against any of the individual defendants, the allegations regarding *Monell* liability are conclusory, and fall short of adequately alleging the elements of *Monell*. There are multiple methods that a plaintiff can employ to establish *Monell* liability: he can plead that a policymaker issued an official proclamation or edict; that there was any custom or practice so permanent and widespread as to have the force of law; that policymakers failed to train employees so as to amount to "deliberate indifference" to the Constitutional rights of a plaintiff. A plaintiff can even, on rare occasions, make a claim for *Monell* liability based on a single decision, where the

decisionmaker is a municipal policymaker. *Mrazek v. Stafford Twp.*, No. CV 13-1091(FLW), 2017 WL 1788655, at *9 (D.N.J. May 5, 2017), *aff'd*, 744 F. App'x 69 (3d Cir. 2018). However, with each of these methods, Plaintiffs must plead facts that allow a court to evaluate whether an alleged unconstitutional policy or custom rises to the level of *Monell* liability; Plaintiffs do not do so here. Instead, they make the blanket assertion that South River has "either instituted a policy of improperly using false reports to DCP&P as a means of retaliation against parents of schoolchildren or demonstrated deliberate indifference in allowing for a pattern of such false reporting to continue without properly training its employees or agents." In doing so, Plaintiffs merely restate the elements of *Monell* liability, failing to provide any "factual predicate for knowledge or acquiescence to any wrongful conduct by [Defendants]." *Schirmer v. Penkethman*, No. 10-1444, 2011 WL 1211324, at *4 (D.N.J. Mar. 28, 2011). Thus, "these allegations are simply conclusory restatements of the legal elements of unconstitutional policy, custom, and failure to train claims under *Monell*." *Schweizer v. Middle Twp. Mayor & Governing Body*, No. 17-00960, 2018 WL 2002792, at *4 (D.N.J. Apr. 30, 2018). These allegations do not include "any facts to show how the policymakers became aware of a pattern and culture of unconstitutional behavior, when and under what circumstances such events occurred, how [South River] failed to properly train its officers, or show the nature of the policy or custom." *Id. See also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997) (explaining that in order to prove a constitutional violation claim against a municipality, a plaintiff must provide "proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right [that] necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the

municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains").[9]

Having failed to state a claim under *Monell*, Plaintiffs' claims against South River are dismissed. Given that I am granting Plaintiffs one last chance to amend their Complaint based on Ms. DelaTorre's alleged false reporting to the DCPP, however, Plaintiff will also have one last chance to amend as to their *Monell* claim against South River, in order to plead facts regarding an alleged unconstitutional policy or custom of false reporting to the DCPP.

**E. Count IV: New Jersey Civil Rights Act**

Plaintiffs also bring a claim under the NJCRA. The NJCRA provides a similar cause of action to § 1983, stating, in relevant part,

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

---

[9] Moreover, to the extent that Plaintiffs seek to assert a *Monell* claim based on an official proclamation or edict, Plaintiffs have failed to identify an official policymaker. While Plaintiffs name Mr. Pfister, the South River superintendent, and Mr. Sherman, the school principal, as Defendants in the case, nowhere does he state that they were "policymakers" in any way responsible for the alleged policy of using false reports to DCP&P as a means of retaliation. Although whether Mr. Sherman or Mr. Pfister are final policymakers is ultimately a legal rather than a factual question, "that does not relieve [Plaintiffs] of the obligation to plead in some fashion that [they] had final policy making authority." *Santiago*, 629 F.3d at 135 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)); *see also Germantown Cab Co. v. Philadelphia Parking Auth.*, No. 14-4686, 2015 WL 4770722, at *9 (E.D. Pa. Aug. 12, 2015) (citations omitted) ("[T]he Amended Complaint fails to plausibly allege the identity of the PPA's final policymaker, and therefore fails to assert a cognizable First Amendment retaliation claim against the PPA pursuant to *Monell*").

N.J. Stat. Ann. § 10:6-2(c). Due to the intentional statutory similarities, this provision "is interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs., Inc.*, 493 Fed.Appx. 238, 241 (3d Cir. 2012) ("To sustain a § 1983 claim, or a NJCRA claim, a plaintiff must show that a defendant had in place a custom or policy which resulted in constitutional deprivation.").

The NJCRA "was intended to provide New Jersey citizens with a state analogue to Section § 1983 actions," and in that regard, just like § 1983, a private right of action under the NJCRA requires the presence of state action. *See Marjac, L.L.C. v. Trenk*, No. 06-1440, 2009 U.S. Dist. LEXIS 59830, at *9, 2009 WL 2143686 (D.N.J. Jul. 14, 2009) ("Plaintiffs are required to come forward with evidence that their constitutional rights, under the federal or state constitutions, have been violated as a result of some state action."), *rev'd on other grounds*, 380 Fed. Appx. 142 (3d Cir. 2010). Indeed, NJCRA is interpreted as analogous to Section 1983. *See Szemple v. Corr. Med. Servs.*, 493 Fed. Appx. 238, 241 (3d Cir. 2012); *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443 (D.N.J. 2011); *Rezem Family Assocs., LP v. Borough of Millstone*, 423 N.J. Super. 103, 115 (App. Div. 2011).

Because Plaintiffs have not adequately alleged that Defendants violated any of their federal constitutional rights under Section 1983, they have similarly failed to adequately allege violations of these rights under the NJCRA. Additionally, Plaintiffs have not specified which of their rights under the New Jersey Constitution, if any, Defendants have violated. Therefore, Plaintiffs' NJCRA claim in Count IV is dismissed. Plaintiffs may, however, bring an amended NJCRA claim against Ms. DeLatorre only, parallel to their First Amendment retaliation claim based on Ms. DelaTorre's alleged false reporting to the DCPP.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted, and all claims against Defendants are dismissed. Plaintiffs may file a second amended complaint within fifteen (15) days of this Opinion, but it shall be limited to alleging a First Amendment retaliation claim and parallel NJCRA claim against only Ms. DelaTorre, based on her alleged false reporting to the DCPP, and a *Monell* claim against South River based on a policy or custom of false reporting to the DCPP. Plaintiffs may not include claims against any other Defendants, who are all dismissed from the case.

Dated:  April 29, 2019                                    /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          United States District Judge